IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT HOOK,<br><br>     Petitioner,<br><br>vs.<br><br>MICHAEL CAPRA, SUPERINTENDENT,<br>Sing Sing Correctional Facility,<br><br>     Respondent. | No. 9:12-cv-00288-JKS<br><br>MEMORANDUM DECISION |

  Robert Hook, a New York state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Hook is in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Sing Sing Correctional Facility. Respondent has answered, and Hook has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

  On direct appeal, the Appellate Division recounted the background of this case as follows:

  While [Hook] was incarcerated on an unrelated charge, the victim—his wife [L.M.]—informed him that she no longer wished to be married to him. Two days after [Hook's] release, the victim agreed to meet him for a conversation. She told police and several others, including a hospital sexual assault nurse who examined her on the following day, that [Hook] became angry with her during their meeting, sexually assaulted her and cut her genitals with a knife. Police found [Hook] at the home of a third party, confiscated two knives from his person, and arrested him after an interview in which, among other things, [Hook] denied having seen the victim at all on the evening in question.
  [L.M.] testified before a grand jury. [Hook] was indicted for aggravated sexual abuse in the first degree, attempted rape in the first degree, sexual abuse in the first degree, unlawful imprisonment in the first degree, and criminal possession of a weapon in the fourth degree. Before trial, [L.M.] recanted her statements implicating [Hook]. At [Hook's] jury trial, she testified that the sexual encounter was consensual and that [Hook] did not use a knife against her.

*People v. Hook*, 914 N.Y.S.2d 755, 756 (N.Y. App. Div. 2011).

A jury convicted Hook of first-degree aggravated sexual abuse, first-degree attempted rape, first-degree sexual abuse, first-degree unlawful imprisonment and fourth-degree criminal possession of a weapon. *Id*. The court sentenced Hook to an aggregate term of twenty years' imprisonment followed by five years of post-release supervision. His sentence was later modified to impose an aggregate term of twenty years' post-release supervision.

Through counsel, Hook directly appealed, arguing that: 1) trial counsel was ineffective for failing to adequately cross-examine L.M., call other witnesses, or present a defense; and 2) his statements to police should have been suppressed because he had not been informed of his *Miranda* rights.[1] Hook then filed a *pro se* brief with the Appellate Division, in which he additionally argued that: 1) he was unlawfully arrested without a warrant; 2) the court erred in failing to give a circumstantial evidence charge with respect to the two knives that were found on Hook when he was questioned by police; 3) L.M. committed perjury, thereby depriving him of a fair trial; and 4) there was insufficient evidence to convict him of any of the counts. Hook also briefly referenced the following claims: 1) he was denied the right to cross-examine L.M. or call his own witnesses; 2) according to forensic testimony, no blood or skin was found on the two knives found on him at the time of police questioning; 3) the court failed to consider L.M.'s "affair" with another man; and 4) the court failed to consider L.M.'s recantation.

The Appellate Division affirmed Hook's judgment of conviction, concluding that the search and arrest were valid because a third party invited the police officers into his home where Hook was found. *Hook*, 914 N.Y.S.2d at 756-57. The court further concluded that the interview

---

[1] *See Miranda v. Arizona,* 384 U.S. 436 (1966).

at the third party's home was not a custodial interrogation and therefore Hook's statements in response to the officers' questions were not obtained in violation of his *Miranda* rights. *Id*. at 757. The court likewise found that Hook's claim that his convictions were not supported by legally insufficient evidence was unpreserved, as his motion to dismiss at the close of the People's case was not based on the grounds raised on appeal and there was no reason to reverse the convictions in the interest of justice because there was sufficient evidence to support the jury's conclusion. *Id*. at 756. Lastly, the court rejected Hook's claim that trial counsel was ineffective for failing to adequately cross-examine L.M. or present an effective defense. *Id*. at 757-58.

Hook sought leave to appeal to the Court of Appeals, again claiming that the evidence was insufficient to support his conviction because no blood was found on the knives and because L.M. recanted and that his statement to police was obtained in violation of his *Miranda* rights. The Court of Appeals denied leave to appeal.

Hook also filed a *pro se* petition for writ of error coram nobis, alleging that appellate counsel was ineffective for raising only two arguments on direct appeal and failing to present oral argument in support of those complaints. The Appellate Division denied the petition, and it does not appear that Hook sought leave to appeal from that denial.

Hook additionally moved to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10. The trial court denied Hook relief, concluding that Hook's claims had already been decided on the merits on direct appeal.

Hook timely filed a *pro se* Petition for Writ of Habeas Corpus with this Court on January 16, 2012.

## II. ISSUES RAISED

Hook raises the following claims in his Petition before this Court: 1) trial counsel was ineffective for failing to cross-examine L.M.; 2) the arresting officers questioned him at the third party's home in violation of his *Miranda* rights; and 3) there was insufficient to support his convictions because the knives did not have any blood on them and because L.M. recanted at trial.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v. Lett*, 559 U.S. 766, 777-78 (2010). The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds and not on the supervisory

power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted). In applying these standards in habeas review, this Court reviews this "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A. Exhaustion

Respondent argues that one of Hook's claims is unexhausted. By letter dated June 10, 2014, Hook requested permission of this Court to submit a supplemental memorandum of law addressing the issue of exhaustion of claims in the state courts. Docket No. 18. The Court granted Hook's request on July 8, 2014, giving him 30 days to file a supplemental brief addressing only exhaustion. Docket No. 19. Hook filed a supplemental brief on August 4, 2014. Docket No. 20. His 22-page supplemental brief, however, only touches on exhaustion. Specifically, he states that he "has sufficiently presented and [exhausted] his points." Docket No. 20 at 10. The remainder of his brief rehashes arguments already raised and also incorporates new legal theories, such as prosecutorial misconduct, which the Court warned in its July 8, 2014, order would not be considered. Docket No. 19.

Respondent is correct in asserting that this Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66.

Respondent correctly contends that Hook's ineffective assistance of counsel claim is unexhausted because he failed to raise it in his application for leave to appeal to the Court of Appeals. Although Hook mentioned in his motion to vacate the judgment that he was basing his motion in part on "ineffective counsel," the Second Circuit has held that the "mere mention" of "ineffective assistance of counsel," without more, is insufficient to alert the New York courts to the possible federal basis of that claim. *Cornell v. Kirkpatrick*, 665 F.3d 369, 376 (2d Cir. 2011). Hook's ineffective assistance of counsel claim is therefore unexhausted.

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be

procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted). Hook's unexhausted ineffective assistance of counsel claim is not barred, however, because there is no time limit or number bar in filing writ of error coram nobis applications. *See Smith v. Duncan*, 411 F.3d 340, 347 n.6 (2d Cir. 2005); *Turner v. Sabourin*, 217 F.R.D. 136, 147 (E.D.N.Y. 2003). Hook may therefore still exhaust this claim in state court. This Court could stay the petition and allow Hook to return to state court to satisfy the exhaustion requirement as to the remaining claim. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001). However, Hook has not requested that this Court stay and hold his petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). In his Petition and supplemental briefings, Hook provides no reason why he did not seek relief on this claim through an additional coram nobis application to the state court.

Despite Hook's failure to exhaust his ineffective assistance of counsel claim, this Court nonetheless may deny his claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines*, 544 U.S. at 277. Accordingly, this Court declines to dismiss these claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B. Merits

Claim One: Ineffective assistance of counsel

Hook first claims that trial counsel was ineffective because he "failed to cross-examine [L.M.] about inconsistent statements she had made to hospital personnel hours after the attack which indicated that there was no 'penile-vaginal penetration.'" The Appellate Division denied Hook relief on this claim, concluding that Hook was not deprived of meaningful representation. *Hook*, 914 N.Y.S.2d at 757-58.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant "must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense." 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393. An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective

standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's errors, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id*. at 124 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id*. (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants that the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Because the state court adjudicated the merits of his ineffective assistance claim, to obtain habeas relief, Hook "must prove that the state court either identified the federal standard for ineffective assistance but applied that standard in an objectively unreasonable way, or that the state applied a rule that contradicts the federal standard." *Rosario*, 601 F.3d at 122. Hook has failed to sustain this burden. During direct testimony, L.M. testified that she was unwilling to testify and had been forced to do so. She then provided a brand new version of events, claiming the encounter was consensual, Hook did not use a knife, and her clothing was torn while Hook saved her from falling. When the People confronted her with the inconsistent statements she had previously made to police and the grand jury, L.M. claimed that she had fabricated them and had been "bribed" by the People with a $25 dollar gas card to testify. In summation, defense counsel argued that "[t]he crux of the whole case . . . really comes back to [L.M.]," stating that it might be possible that the incident was a fabrication and that, given a previous domestic incident between L.M. and Hook, "we are not talking about Ozzie and Harriet here."

As the Appellate Division noted, although defense counsel's cross-examination was brief, it appears to have been a trial tactic "in view of the exculpatory version of events that the victim had already provided and the damage to her credibility that had occurred during direct examination—all of which was consistent with the defense strategy depicting the victim as an unreliable witness who had falsified her initial claims." *Hook*, 914 N.Y.S.2d at 758; *see McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1999) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance, and a court may not use hindsight to second-guess counsel's tactical choices." (citations and internal quotation marks omitted)). Further, during cross-examination defense counsel additionally damaged L.M.'s

credibility by eliciting her admission that she had been criminally charged with falsifying statements pertaining to Hook's case. Defense counsel was able to cast significant doubt on L.M.'s credibility as a witness. Although it is sufficient to deny Hook's claim on the ground that defense counsel's performance was not deficient, *see Strickland*, 466 U.S. at 697, Hook additionally did not suffer prejudice because L.M. recanted and claimed her prior complaints were fabrications.

Claim Two: *Miranda* violation

Hook next argues that he made statements to police before he was read his *Miranda* rights, and thus that those statements should have been suppressed. The Appellate Division denied relief on this claim, concluding that the police interview was not a custodial interrogation and therefore *Miranda* warnings were not required. *Hook*, 914 N.Y.S.2d at 757. The court determined that "[a]lthough no *Miranda* warnings were given to [Hook] before or during the interview, [Hook] selected the location, the questioning was relatively brief, the questions were not accusatory, [Hook] was not threatened, handcuffed or restrained in any way, and he did not request an attorney or ask for the questioning to stop." *Id*.

Under *Miranda v Arizona*, 384 U.S. 436 (1966), inculpatory statements made by a defendant during an interrogation while in police custody are inadmissible unless the defendant has been informed of his rights to remain silent and to the assistance of counsel and, after having been given the *Miranda* warning, waives those rights. *N. Carolina v. Butler*, 441 U.S. 369, 372-73 (1979) (quoting *Miranda*, 384 U.S. at 475). "Custody" is a "term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, __U.S.__, 132 S. Ct. 1181, 1189 (2012). In determining whether a person is in custody,

"the initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave." *Id*. (citations, internal quotation marks and brackets omitted). In order to determine how a suspect would have "gauged his freedom of movement," courts must examine "all the circumstances surrounding the interrogation." *Id*. (citation, internal quotation marks and brackets omitted). "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during questioning, and the release of the interviewee at the end of questioning." *Id*. (citations omitted). Not all restraints on movement amount to custody for purposes of *Miranda*, however. *Id*. A court must therefore also resolve "the additional question [of] whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*. at 1190.

The Appellate Division, after viewing the totality of the circumstances, including the location of the questioning, its duration, the nature of the questioning, and the presence of any sort of threat of constraint on freedom, in accordance with *Howes*, 132 S. Ct. at 1189, concluded that Hook was not in custody at the time of police questioning. After independently reviewing the record, although certain factors weigh in favor of finding custodial interrogation—including the fact that three armed officers questioned Hook at his friend's trailer after confiscating Hook's knives, and the fact that Investigator David testified that they did not procure an arrest warrant specifically so that they could question Hook, after which he was immediately arrested—this Court concludes that the Appellate Division's determination was not contrary to or an

unreasonable application of federal law, and did not result in a decision that was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1) & (2).

Claim Three: Insufficiency of the evidence

Hook argues that his convictions were not supported by sufficient evidence because neither of the knives recovered from Hook during police questioning had any blood on them and because L.M. recanted. Citing, *inter alia*, *People v. Gray*, 652 N.E.2d 919, 921 (N.Y. 1995), the Appellate Division denied Hook relief, concluding that this argument was unpreserved because "his motion to dismiss at the close of the People's case was not based on the grounds raised on appeal." *Hook*, 914 N.Y.S.2d at 756. The court further found that there was no "reason to reverse the convictions in the interest of justice, as sufficient evidence was presented to support the jury's conclusions." *Id*.

Respondent correctly contends that this claim is procedurally barred from habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment"). Where a state-court holding contains a plain statement that a claim is procedurally barred, the federal habeas court may not review it, even if, as here, the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (explaining that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it "explicitly invokes a state procedural rule as a separate basis for decision"); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). In New York, an objection to the legal sufficiency of the evidence takes the form of a motion to dismiss, which must be specific and be made at the close

-13-

of the People's case, a procedural rule with which Hook did not comply. *Baker v. Kirkpatrick*, 768 F. Supp. 2d 493, 499-500 (W.D.N.Y. 2011). Federal district courts have regularly held that an appellate court's reliance on *People v. Gray*, 86 N.Y.2d at 19, for the proposition that a defendant failed to preserve a claim by making an appropriate motion to dismiss constitutes an adequate and independent state ground to bar the claim from habeas review. *See Baker*, 768 F. Supp. 2d at 500 (Appellate Division's reliance on *People v. Gray*, where petitioner failed to make a specific motion to dismiss on grounds of legal insufficiency of the evidence at the close of the People's case, was an independent and adequate ground for procedural bar); *Carter v. Chappius*, No. 9:12-cv-00171, 2013 WL 6579055, at *7 (N.D.N.Y. Dec. 13, 2013); *Anderson v. Griffen*, No. 11-CV-6633, 2012 WL 5227297, at *2 (W.D.N.Y. Oct. 22, 2012); *Green v. Conway*, No. 09-CV-6416, 2011 WL 5827317, at *4 (W.D.N.Y. Nov. 18, 2011).

To avoid a procedural bar, a petitioner must demonstrate either cause for the default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted. *Coleman*, 501 U.S. at 749-50 (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)); *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002). Hook has not carried his burden.

In any event, Hook misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this

standard). This Court must therefore determine whether the Appellate Division unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction. *See Schlup v. Delo*,

513 U.S. 298, 330 (1995). In order to establish first-degree aggravated sexual abuse, the People were required to prove that Hook, through forcible compulsion, inserted a foreign object into L.M.'s vagina causing her to suffer physical injury. N.Y. PENAL LAW § 130.70. "Forcible compulsion" means to compel another by use of physical force or, *inter alia*, a threat which places a person in fear of immediate physical injury. *Id*. § 130.00(8)(a) & (b). A "foreign object" includes "any instrument or article, when inserted into the vagina, . . . is capable of causing physical injury." *Id*. § 130.00(9). To establish first-degree sexual abuse, the People were required to prove that Hook subjected L.M. to sexual conduct by forcible compulsion. *Id*. § 130.65(1). In order to establish first-degree attempted rape, the People were required to prove that Hook attempted to engaged in sexual abuse with L.M. by forcible compulsion. *Id*. §§ 110.00 & 130.35(1). To establish first-degree unlawful imprisonment, the People had to prove that Hook restrained L.M. under circumstances that exposed her to a risk of serious physical injury. *Id*. § 135.10. Lastly, in order to prove fourth-degree criminal possession of a weapon, the People had to prove that Hook possessed a dangerous or deadly weapon, which includes certain types of knives, with the intent to unlawfully use them against L.M. *Id*. § 265.01.

     L.M.'s retraction both prior to and at trial was not fatal to the People's case. Likewise, the People's case was not defeated by the fact that no blood was found on either knife recovered from Hook. Among other evidence at trial, a sexual assault nurse examiner who examined L.M. after the assault testified that when L.M. arrived, she was "alternately calm and weepy," "looked traumatized," and had severe lower back pain, which is circumstantial evidence that L.M. had suffered trauma of some sort. The nurse offered L.M. three options—to not have any evidence collected, collect the evidence and hold it for 30 days while L.M. had time to "make decisions,"

-16-

or collect evidence and turn it over to the police. L.M. elected to have the evidence collected and turned over to police, indicating that she believed at that time that Hook had committed sexual abuse. L.M. then specifically told the sexual assault examiner that Hook held her ankles over her head, digitally penetrated her for a few minutes, and "used a sharp instrument, maybe a knife," and stated that he was going to cut her, calling her a "whore." L.M. stated to the nurse that she then "felt a knife poke [her] down there and . . . quit fighting." The nurse testified that L.M. sustained nick marks to the inside of her thigh, a laceration on her labia that was consistent with a knife wound, a bruise on her labia, and also observed that her labia were swollen and red. Photos of L.M.'s injuries were shown to the jury and admitted into evidence.

Both knives found on Hook testified negative for blood, but they were positive for both Hook and L.M.'s DNA. A neighbor and also a friend of L.M. both testified that L.M. sought help from them immediately after the incident, and that L.M. told them that Hook had tried to rape her. The voice mail recordings of L.M. asking her friend for help immediately after the assault were also played for the jury. L.M.'s statements to the investigator and grand jury, which were consistent with her statement to the nurse examiner, came in during the impeachment of L.M. after she changed her story at trial.

The jury apparently found that Hook possessed the knives and intended to unlawfully use them against L.M., that he restrained her under circumstances that exposed her to a high risk of serious injury, that he forcibly compelled her into sexual contact and used one of his knives to penetrate her. Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve any conflicts in evidence in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Hook bears the burden of establishing by clear and convincing

evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). Hook has failed to carry such burden. The evidence in the record does not compel the conclusion that no rational trier of fact could have found proof that Hook was guilty of these crimes, especially considering the double deference owed under *Jackson* and the AEDPA. Hook therefore cannot prevail on his insufficiency of the evidence claim.

## V. CONCLUSION

Hook is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Second Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 8, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge